**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0020n.06

**No. 10-6353**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

*Jan 09, 2012*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| MARCUS COLLINS, | ) | WESTERN DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |

Before: SUHRHEINRICH, SUTTON and COOK, Circuit Judges.

SUTTON, Circuit Judge. Marcus Collins appeals his conviction on federal firearms charges, arguing that the district court improperly admitted his confession to the crime and other evidence. We affirm.

I.

In January 2009, Memphis police identified a trend connecting vehicle break-ins in the Tillman Precinct. Witnesses of several burglaries reported that the culprit was a man wearing a toboggan (the hat, not the sled) and driving a dark-colored Cadillac with a malfunctioning taillight. Officers set up surveillance in the neighborhood on the nights of the week when most of the burglaries seemed to be occurring, and eventually identified a vehicle matching the profile. The vehicle was registered to Marcus Collins, whom they placed under intermittent surveillance for

roughly two weeks. During that time, they saw Collins drive his Cadillac to a car lot, leave it there and drive off in a black Ford Taurus with temporary tags. Later reports of automobile break-ins in the area described a suspect who matched the earlier description, except witnesses now reported he drove a black Ford Taurus.

On January 28, 2009, several break-ins occurred in the neighborhood. After a plain-clothes officer reported seeing a vehicle matching the description of Collins' Taurus, Officer Zane Lewis stopped Collins. As he approached the Taurus, Lewis saw a black and green duffle bag with the logo of White Station High School on the back seat—the same type of bag that had been stolen in one of the break-ins earlier in the day. Through questioning, Lewis learned that Collins was driving without insurance and with a suspended license. He performed a pat-down and discovered a flashlight and a metal object used for breaking glass known as a "window punch, both tools commonly used by car burglars. Lewis placed Collins under arrest and had his car towed. Before removing the vehicle, the police performed an inventory search of it.

After giving oral and written waivers of his *Miranda* rights, Collins confessed to numerous car burglaries, including the theft of a shotgun that forms the basis for the federal firearms charges here. A grand jury charged Collins with being a felon in possession of a firearm and knowingly possessing a stolen firearm. *See* 18 U.S.C. §§ 922(g), (j). The case went to trial, and the jury convicted Collins of both charges.

II.

Collins argues that the district court should have suppressed the evidence gathered from his car as the product of an unconstitutional search. The district court held that officers performed the inventory search in a manner consistent with the department's towing policy, making the evidence admissible under *South Dakota v. Opperman*, 428 U.S. 364, 372 (1976). On appeal, the parties spar over whether the search complied with the department's policy, disputing the facts (whether the car was legally parked) and the meaning of the policy (whether the fact Collins was alone meant a friend could not move the vehicle for him). We need not answer these questions because either way the police had probable cause to search the vehicle. *Arizona v. Gant*, 556 U.S. 332, __, 129 S. Ct. 1710, 1721 (2009) (noting that "established exceptions to the warrant requirement authorize a vehicle search" where "there is probable cause to believe a vehicle contains evidence of criminal activity").

Consider the probable-cause evidence arrayed against Collins. Witnesses confirmed that Collins switched from driving a Cadillac to a Taurus at the same time the burglar made a similar switch. A bag visible in Collins' back seat matched the description of a bag stolen from a car earlier in the day. And during the pat-down of Collins, Officer Lewis discovered tools often used by car burglars. All of this gave the police probable cause to believe that they would discover additional evidence of the vehicle break-ins in Collins' car. The trial court properly admitted the evidence.

The district court also properly admitted Collins' confession. A person may waive his Fifth Amendment rights "provided the waiver is made voluntarily, knowingly and intelligently." *Miranda*

*v. Arizona*, 384 U.S. 436, 444 (1966). Collins did just that. He points to no evidence of police coercion, which would be necessary to a claim of involuntariness. *See Colorado v. Connelly*, 479 U.S. 157, 167 (1986). And he has not demonstrated that his diabetes (or anything else) left him unable to understand what he was doing; the investigating officer, to the contrary, testified that Collins was "very alert" throughout the interview. R. 53-1 at 13. Also confirming that Collins knew what he was doing are his accurate descriptions of robberies that occurred weeks earlier and his cogent explanation of why he would break multiple windows in the cars he targeted rather than just one (he was concerned that opening a door might set off the car alarm). On this record, the district court permissibly found that the confessions were knowing and intelligent. *See United States v. Davis*, 430 F.3d 345, 351 (6th Cir. 2005).

Collins persists that his diabetes caused his blood sugar to drop during the interview, leaving him "out of [his] mind" and unable to carry on a conversation or waive his *Miranda* rights. R. 53 at 137–38. But during the same hearing, he also testified (without corroboration) that when his blood sugar was tested shortly after the interview it was "extremely high"—higher than it had ever been, so high indeed that the machine could not read it. R. 53 at 139. Even assuming that low (or high) blood sugar would be enough to void a *Miranda* waiver, the district court was not required to believe one-half of this contradictory story.

Collins, lastly, argues that the prosecution violated its discovery obligations when it failed to provide two supplemental witness reports in advance of trial. Rule 16 of the Federal Rules of Criminal Procedure requires the government to give the defendant access to evidence in its

possession if it "is material to preparing the defense" or the government intends to use it in its case-in-chief.  This evidence came to light during the defense's cross-examination, so the only possible ground for a Rule 16 violation would be a showing that the supplemental witness statements were "material to preparing the defense."  But the supplemental reports did not differ from the incident report (which the prosecution provided to Collins) in any meaningful way, establishing that access to them was not material to the preparation of the defense.  Even if there were something helpful in the supplemental reports, the strength of the government's case—based on Collins' signed and valid confession to the crime, including an accurate description of the shotgun—would make any error harmless.  *See* Fed. R. Crim. P. 52(a); *United States v. Clark*, 385 F.3d 609, 619 (6th Cir. 2004).

III.

For these reasons, we affirm.