NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0672n.06

No. 16-3073

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Dec 14, 2016
DEBORAH S. HUNT, Clerk

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

V.

WILLIAM JEHROD PATE,

      Defendant-Appellant.

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF OHIO

BEFORE:    MOORE and CLAY, Circuit Judges; HOOD, District Judge.[*]

**CLAY, Circuit Judge.**  William Jehrod Pate ("Defendant") appeals his 180-month sentence for one count of possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1), one count of possession of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1)(A)(i), and one count of possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1). Defendant asks this Court to vacate his convictions, suppress all evidence seized from his residence, and suppress all statements made to law enforcement agents during the search. For the reasons set forth in this opinion, we **AFFIRM** the district court's judgment.

---

[*] The Honorable Joseph M. Hood, Senior District Judge of the United States District Court for the Eastern District of Kentucky, sitting by designation.

## I.    STATEMENT OF FACTS

### A.  Procedural History

On April 30, 2015, Defendant was formally indicted for one count of possession with intent to distribute five-hundred grams or more of cocaine, in violation of 21 U.S.C. § 841(a)(1) and § 841(b)(1)(B)(ii), one count of possession of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1)(A)(i), and one count of possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1) and § 924(a)(2).

On June 25, 2015, Defendant filed a host of pretrial motions, including the Motion to Suppress Evidence and the Motion to Suppress Statements.  On August 4, 2015, the district court held a hearing on Defendant's pretrial motions, and orally denied the Motion to Suppress Evidence.  The district court concluded that Defendant failed to demonstrate that the affidavit contained intentionally false or misleading statements and, therefore, he was not entitled to a *Franks v. Delaware*, 438 U.S. 154 (1978), hearing.  With regard to the Motion to Suppress Statements, the court heard testimony from Drug Enforcement Administration ("DEA") Agent Thomas Costanzo and testimony from Defendant.  On August 11, 2015, the court issued written orders denying both motions.

On September 21, 2015, Defendant entered a conditional guilty plea to Counts One, Two, and Three of the indictment without a plea agreement pursuant to Federal Rule of Criminal Procedure 11(a)(2), which reserved his right to have an appellate court review an adverse determination on any pretrial motion filed in the matter.  On January 26, 2016, the district court sentenced Defendant to 120 months on Counts One and Three to run concurrently and sentenced Defendant to 60 months on Count Two to run consecutively to the sentences on Counts One and Three.  On January 26, 2016, Defendant filed his timely notice of appeal.

## B. Factual Background

### i. State Affidavit

On March 23, 2015, Ohio State Trooper Ryan E. Elsey, an investigator with the Ohio State Highway Patrol's Office of Criminal Investigations, who was also serving concurrently on the DEA's Task Force and working with Agent Costanzo on the investigation into Defendant, submitted a state application and affidavit to the Franklin County Court of Common Pleas for phone records associated with a particular telephone number (xxx) yyy-zzzz. In the affidavit, Trooper Elsey listed four prior arrests of Defendant, including a 1994 arrest for felony drug trafficking, a 2000 arrest for possession of cocaine, a 2002 arrest for felony possession of drugs, and a 2005 arrest for felony drug trafficking.

The state affiant then stated that, beginning in February 2015, "a confidential source informed investigators [Defendant] was actively involved in trafficking kilogram quantities of cocaine" and that a "separate confidential source also informed investigators [Defendant] was actively involved in trafficking kilogram quantities of cocaine." (R. 57-3, Pl.'s Resp. to Mot. to Suppress Evid., State Appl. and Aff., PageID# 188.) The second informant "provided [(xxx) yyy-zzzz] as a telephone number utilized by [Defendant] in furtherance of his illegal narcotics trafficking activities." (*Id.*)

The state affiant further stated that "physical surveillance conducted by investigators corroborated the information provided by the two confidential sources regarding [Defendant]'s involvement in trafficking cocaine." (*Id.*) Trooper Elsey lastly noted that on March 19, 2015, "investigators received the responsive records for a subpoena issued to T-Mobile US," which provided that "the account to which [(xxx) yyy-zzzz] is linked is in the name of "William J. Pate[.]" (*Id.* at 189.)

## ii. Execution of Federal Search Warrant

On March 24, 2015, Defendant agreed to sell one and one-half kilograms of cocaine to a confidential informant working with the DEA. The drug transaction was arranged to occur at Defendant's residence on Tudor Road in Columbus, Ohio ("residence").

That same day, a federal magistrate judge authorized a search warrant ("Search Warrant" or "federal search warrant"), which was promptly executed at the residence. The affidavit underlying the federal search warrant contained information from two confidential informants who purchased cocaine from Defendant or who knew Defendant to be a kilogram dealer of cocaine. When law enforcement arrived at the residence, they observed Defendant flee through the back of the residence. Defendant was detained after a brief foot pursuit and placed in the back of a law enforcement agent's vehicle while the agents searched the residence.

While in the back of the vehicle, Defendant vomited, and emergency medical personnel from the Columbus Fire Department ("CFD") treated Defendant. Defendant told CFD that he is diabetic and takes daily medication to control his blood sugar. Defendant told CFD that he had recently eaten and taken insulin prior to the agents' arrival. Defendant claimed that his blood sugar dropped after he ran from his residence and vomited, so CFD gave Defendant oral glucose to stabilize his blood sugar. The report filed by CFD indicated that shortly after they administered the oral glucose, Defendant's blood sugar was 113, his breath was non-labored and circulation was normal, and he was oriented. CFD further reported that Defendant said to them that he was "OK" and that his blood sugar dropped due to the unexpected run. (R. 59-3, Min. Entry, CFD Report, PageID# 208−09.)

After Defendant had been treated by CFD, Agent Costanzo and Trooper Elsey approached Defendant, introduced themselves, and read the following to Defendant:

Before we ask you any questions, you must understand:

- You have the right to remain silent.

- Anything you say can be used against you in court.

- You have the right to talk to a lawyer for advice before we ask you any questions and to have a lawyer with you during questioning.

- If you cannot afford a lawyer, one will be appointed for you before any questioning, if you wish.

Do you understand? Are you willing to answer some questions?

(R. 59-2, Min. Entry, Agent's Oral Warning Summary Sheet.) Defendant responded that he understood and that he was willing to answer some questions. Agent Costanzo later testified at the hearing on the Motion to Suppress Statements that Defendant, at this point, appeared calm, coherent, cooperative, and responsive, and did not seem to be in any sort of physical discomfort.

During the interrogation, Defendant effectively admitted to ownership of the cocaine, the cocaine press, and the firearms located inside the residence. When the agents asked him about the locations of the items in the residence, Defendant "offered to show us where those items were inside the house." (R. 69, Mots. Hr'g Tr., PageID# 319.) Agent Costanzo testified that throughout the questioning and the walk-through of the residence, Defendant did not appear to be in any physical discomfort, aside from the handcuffs, and that he maintained this demeanor the entire time.

After Defendant and the agents exited the residence, the agents asked him where "the cocaine c[a]me from." (*Id*. at 323.) Defendant suddenly became hostile and upset, and appeared to be offended. Defendant then stated that he wanted an attorney. Agent Costanzo testified that he believed Defendant's demeanor changed when the agents started to ask questions concerning

Defendant's supplier. However, Defendant testified that his demeanor changed because his "blood sugar had c[o]me up and [he] [ ] kn[e]w[ ]" what was going on at that point. (*Id*. at 363.) Defendant stated that he went into hypoglycemic shock after he ran and vomited outside the patrol vehicle, and that he was confused, disoriented, not aware of his surroundings, and in a "dream-like" state during the questioning and residence walk-through. (*Id*. at 355, 358, 378.) Defendant testified that he did not remember being read his *Miranda v. Arizona*, 384 U.S. 436 (1966), rights and did not remember agreeing to answer Agent Costanzo's questions, but that he remembered vomiting, walking around the residence, and walking out of the residence.

The Search Warrant resulted in the seizure of 1,640 grams of cocaine, eleven firearms, including semi-automatic handguns, revolvers, and a shotgun, and other items usually associated with drug trafficking, such as heat sealer bags, a cocaine press, a kilogram wrapper, and digital scales.

## II.  DISCUSSION

On appeal, Defendant challenges the district court's denial of the motions to suppress the evidence seized from the residence and the statements he made to law enforcement regarding his ownership of the evidence seized from the residence. Defendant argues that the district court erred in determining that the state affidavit underlying the application authorizing a search of his phone records was supported by probable cause. Defendant also argues that the district court erred in determining that he knowingly and intelligently waived his *Miranda* rights.

### A.  Motion to Suppress Evidence

Defendant first argues that the state affidavit lacked probable cause because: (1) it contained misleading statements concerning Defendant's prior arrest history; (2) it implied that those prior arrests all resulted in felony convictions; and (3) it lacked information concerning the

credibility of the confidential informants who assisted the government in the search warrant process. Specifically, Defendant argues that the district court erred in denying a *Franks* hearing because the state affidavit contained misleading statements about Defendant's prior arrest history and the confidential informant's information was not corroborated. Defendant contends that the state affiant misstated Defendant's prior state arrest history because he listed four arrests for felony offenses even though two of the arrests were for the same offense, and one of the felony arrests resulted in a misdemeanor conviction, not a felony conviction. Defendant maintains that these misstatements resulted in a "recklessly false affidavit." (Def.-Appellant's Br. ("Def. Br.") at 19.)

### i. Standard of Review

This Court has described the standards applicable to review of the denial of a motion to suppress as follows:

> Whether a search warrant affidavit establishes probable cause to conduct the search is a legal question that this Court reviews de novo. *United States v. Frazier,* 423 F.3d 526, 531 (6th Cir. 2005). In reviewing a magistrate's decision to issue a warrant, the Court must accord the magistrate's determination 'great deference.' *United States v. Allen,* 211 F.3d 970, 973 (6th Cir. 2000) (en banc).

*United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010); *see also United States v. Martin*, 526 F.3d 926, 936 (6th Cir. 2008).

Likewise, when reviewing a district court's decision on a motion to suppress, the Court reviews the lower court's findings of fact for clear error. *United States v. Lyons*, 687 F.3d 754, 762 (6th Cir. 2012) (citing *United States v. Howard*, 621 F.3d 433, 450 (6th Cir. 2010)). A factual finding is clearly erroneous when a court, on reviewing the evidence, "is left with the definite and firm conviction that a mistake has been committed." *United States v. Navarro-Camacho,* 186 F.3d 701, 705 (6th Cir. 1999). Because the district court denied Defendant's

Motion to Suppress Evidence, this Court reviews all evidence in the light most favorable to the government. *United States v. Long*, 464 F.3d 569, 572 (6th Cir. 2006).

Similarly, when reviewing the district court's denial of a *Franks* hearing, this Court reviews findings of fact for clear error and conclusions of law *de novo*. *United States v. Pirosko*, 787 F.3d 358, 369 (6th Cir. 2015) (quoting *United States v. Rose*, 714 F.3d 362, 369−70 (6th Cir. 2013)).

### ii. Relevant Legal Principles

The Constitution's Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. A "state search warrant being challenged in federal court must be judged by federal constitutional standards." *United States v. McManus*, 719 F.2d 1395, 1397 (6th Cir. 1983) (citing *Elkins v. United States*, 364 U.S. 206 (1960)). "Probable cause is defined as 'reasonable grounds for belief, support by less than *prima facie* proof but more than mere suspicion.'" *United States v. King*, 227 F.3d 732, 739 (6th Cir. 2000) (quoting *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990)). In assessing whether a warrant to search a residence passes muster under the Fourth Amendment, the "critical element . . . is . . . that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978).

"[T]o establish probable cause for a search, an affidavit must show a likelihood of two things: first, that the items sought are 'seizable by virtue of being connected with criminal activity'; and second, 'that the items will be found in the place to be searched.'" *United States v. Church*, 823 F.3d 351, 355 (6th Cir. 2016) (quoting *Zurcher*, 436 U.S. at 555 n.6), *cert. petition*

*filed*, No. 16-5648 (Aug. 15, 2016); *United States v. Berry*, 565 F.3d 332, 338 (6th Cir. 2009) (To establish probable cause, officers must demonstrate "a fair probability that contraband or evidence of a crime will be found in a particular place." (quoting *Illinois v. Gates*, 462 U.S. 213, 236 (1983))). "The nexus between 'criminal activity' and the item to be seized is 'automatic[ ]' when the object of the search is 'contraband.'" *Church*, 823 F.3d at 355 (quoting *Warden, Md. Penitentiary v. Hayden*, 387 U.S. 294, 307 (1967)). A "police request to search for illegal drugs therefore needs to satisfy only the second showing for a valid warrant: 'a fair probability' that the drugs 'will be found in a particular place.'" *Id.* (quoting *Gates*, 462 U.S. at 238).

"When determining whether an affidavit establishes probable cause," this Court looks "only to the four corners of the affidavit; information known to the officer but not conveyed to the magistrate is irrelevant." *Brooks*, 594 F.3d at 492; *United States v. Pinson*, 321 F.3d 558, 565 (6th Cir. 2003). The Court does not consider "recklessly and materially false statements" in the affidavit that have been properly stricken during a *Franks* hearing. *See United States v. Elkins*, 300 F.3d 638, 649 (6th Cir. 2002). "A defendant is entitled to a *Franks* hearing if he: 1) makes a substantial preliminary showing that the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement or material omission in the affidavit; and 2) proves that the false statement or material omission is necessary to the probable cause finding in the affidavit." *Pirosko*, 787 F.3d at 369 (internal citations and quotation marks omitted). These allegations must be more than conclusory and must be accompanied with an offer of proof, and if this is satisfied, "then the question becomes whether, absent the challenged statements, there remains sufficient content in the affidavit to support a finding of probable cause." *Bennett*, 905 F.2d at 934 (citing *Franks*, 438 U.S. at 171). There is even "a higher bar for obtaining a *Franks* hearing on the basis of an allegedly material omission as opposed to an

allegedly false affirmative statement." *United States v. Fowler*, 535 F.3d 408, 415 (6th Cir. 2008) (citation omitted).

### iii. Analysis

### 1. Substantial Preliminary Showing

Here, the district court found that Defendant failed to make the necessary substantial showing. We conclude that the district court did not err in finding that Defendant failed to make the necessary substantial preliminary showing.

First, Defendant has failed to demonstrate that the arrest history was an actual misstatement of his arrest record. In fact, Defendant's counsel stated at the hearing on the Motion to Suppress Evidence that the affiant's portrayal of Defendant's arrest record was correct. Defendant's counsel answered in the affirmative when the court asked him whether he "would agree that the affidavit list[ed] – the state court affidavit list[ed] four arrests; and you would agree that there were, technically, to use your word, four arrests; however, they may have been re-arrests on a same charge." (R. 69 at 294.)

Second, Defendant has failed to demonstrate that the affidavit misstated the outcomes of the arrests. At the hearing, the district court asked Defendant's counsel whether "there was [any]thing in the affidavit that indicated a felony conviction when it shouldn't have indicated a felony conviction[.]" (*Id.*) Defendant's counsel responded "[n]o," the affidavit did not indicate a felony conviction when it should not have indicated one. (*Id.*) However, Defendant's counsel then went on to state that part of his argument is that "[i]t's misleading to list [an arrest for a felony offense] when you know somebody was convicted of a misdemeanor, to put it in an affidavit [that] they were arrested on a felony trafficking-in-drugs, when you know it's a misdemeanor, couple of bags of marijuana." (*Id.* at 294−95.)

Defendant's argument would essentially require an affiant to investigate the resolution of the defendant's prior arrests and present that research to the magistrate judge. This requirement is contrary to this Court's view that "[a]n affiant cannot be expected to include in an affidavit every piece of information gathered in the course of an investigation." *Mays v. City of Dayton*, 134 F.3d 809, 815 (6th Cir. 1998) (citation omitted). Moreover, this requirement is incongruent with the actual showing a defendant must make in order to warrant a *Frank*s hearing: a substantial preliminary showing of intent to mislead. *Id*. at 816 (noting that a *Franks* violation requires "a showing of intent, i.e., a 'deliberate falsehood' or 'reckless disregard for the truth'").

The record reflects that Defendant failed to demonstrate either a deliberate falsehood or reckless disregard for the truth, and therefore, the first prong is not met.

### 2. False Statement or Material Omission

The district court found that Defendant failed to show that the alleged false statements and material omissions were necessary to the probable cause finding. We conclude that the district court did not err in making this finding.

### a. State Affidavit

The arguments presented in Defendant's Motion to Suppress Evidence were primarily based on Trooper Elsey's state affidavit underlying the application for telephone records associated with phone number (xxx) yyy-zzzz. Defendant sought to exclude the fruits of all the evidence obtained in the March 24, 2015, search of his residence because he claimed that Trooper Elsey's affidavit was without probable cause, and therefore tainted every derivative search and seizure. On appeal, Defendant asserts the same argument. Defendant essentially argues that the federal search warrant is tainted because the state application and underlying state affidavit lacked probable cause. Defendant's argument is unpersuasive.

First and foremost, the state affidavit supports a finding of probable cause for a search of Defendant's telephone records. *See United States v. Woosley*, 361 F.3d 924, 926 (6th Cir. 2004) (stating that an affidavit that "supplies little information concerning an informant's reliability may support a finding of probable cause, under the totality of the circumstances, if it includes sufficient corroborating information") (citing *Gates*, 462 U.S. at 241−45; *United States v. Tuttle*, 200 F.3d 892, 894 (6th Cir. 2000)). On March 23, 2015, Trooper Elsey stated in his affidavit that the "facts set forth within this affidavit come from [his] own personal involvement with the case, as well as information provided by other law enforcement sources, officers, and reports," and due to the fact that "this affidavit is being submitted for the limited purpose of obtaining a court order for the cellular telephones of [Defendant], it does not contain an exhaustive listing of each and every currently known fact concerning the investigation." (R. 57-3 at 188.) Trooper Elsey listed a 1994 arrest for felony drug trafficking, a 2000 arrest for possession of cocaine, a 2002 arrest for felony possession of drugs, and a 2005 arrest for felony drug trafficking. (*Id.*)

The state affiant then stated that in February 2015, "a confidential source informed investigators [Defendant] was actively involved in trafficking kilogram quantities of cocaine," and that a "separate confidential source also informed investigators [Defendant] was actively involved in trafficking kilogram quantities of cocaine." (*Id.*) The second informant "provided [(xxx) yyy-zzzz] as a telephone number utilized by [Defendant] in furtherance of his illegal narcotics trafficking activities." (*Id.*) The state affiant further stated that "physical surveillance conducted by investigators corroborated the information provided by the two confidential sources." (*Id.*) The state affiant also noted that on March 19, 2015, a subpoena issued to T-Mobile provided that the number (xxx) yyy-zzzz was linked to "William J. Pate[.]" (*Id.* at 189.)

Moreover, the second informant's tip that Defendant distributed kilograms of cocaine was corroborated by the information provided by the first informant. *See Gates*, 462 U.S. at 244−45 ("It is enough, for purposes of assessing probable cause, that 'corroboration through other sources of information reduce[s] the chances of a reckless or prevaricating tale' . . . ."); *see also United States v. Artez*, 389 F.3d 1106, 1114 (10th Cir. 2004) (holding that a "tip from a second informant can also help corroborate information from a confidential informant"). Additionally, both informants' stories were corroborated by the fact that T-Mobile's records showed Defendant's name in connection with the telephone number, (xxx) yyy-zzzz, that one of the informants associated that number with Defendant and his drug trafficking, and that investigators conducting physical surveillance confirmed the validity of the informants' information.

Accordingly, Defendant has not demonstrated that the false statements or material omissions were necessary to the probable cause finding in the state affidavit. *See Pirosko*, 787 F.3d at 369.

### b. Federal Affidavit

We also note that, irrespective of the state affidavit, the federal affidavit underlying the search warrant of Defendant's residence was sufficiently supported by probable cause. The federal affidavit contained information from two confidential informants who purchased cocaine from Defendant or who knew Defendant to be a kilogram dealer of cocaine.

On February 24, 2015, Agent Costanzo was contacted by another law enforcement agency who informed him that a subject in an active investigation was traveling to an unknown location in Columbus, Ohio, to purchase a kilogram of cocaine. The agents located the subject

and followed him/her to Defendant's residence where they observed the informant enter the residence and exit the residence carrying an object that was placed in the informant's trunk.

The informant was traveling from Defendant's residence when he or she was intercepted by a marked police car and pulled over. A search of the subject's vehicle yielded one kilogram of cocaine and a firearm from the trunk. The informant agreed to assist law enforcement, and informed them that he or she had traveled to Defendant's residence to purchase the kilogram of cocaine. The informant then told law enforcement that he or she called Defendant, known as "Rodney," at (xxx) yyy-zzzz earlier that day to order the kilogram of cocaine. (R. 57-1, Pl.'s Resp. to Mot. to Suppress Evid., Federal Appl. and Aff., PageID# 169.) The informant met with "Rodney" at the residence to purchase the kilogram of cocaine for $44,000. Law enforcement searched the informant's phone records from February 24, 2015, which showed multiple phone calls between the first confidential informant and the number, (xxx) yyy-zzzz. Those phone calls led up to the time when the agents observed the informant enter Defendant's residence. The informant also told the agents that over the past year, he or she had purchased cocaine from "Rodney" once per week in the same method described above and all of the transactions occurred at "Rodney's" residence. (*Id*. at 169−70.)

The affiant, Agent Costanzo, then describes how searches of various law enforcement databases revealed that William J. Pate was an occupant of the residence. The agents then showed a picture of Defendant to the informant, who identified Defendant as the person known as "Rodney." (*Id*. at 170.) The informant's story was further corroborated by a recorded phone conversation between the informant and Defendant after the drug transaction took place. The informant told the agents that, while Defendant was weighing the cocaine at the residence, some spilled on the floor. The informant later called Defendant at (xxx) yyy-zzzz, and Defendant

stated that he had "found a chunk" under the refrigerator and that it "looked like it was at least a ball." (*Id.*) The affiant stated that law enforcement agents knew a "ball" to be one-eighth of an ounce of cocaine. (*Id.*)

Moreover, the informant told the agents that Defendant made his wife and young child leave the residence while the informant purchased the cocaine. The affiant stated that this information was consistent with what the agents observed during surveillance of the informant on February 24, 2015. The agents observed Nicole Nichols, who had been identified as living with Defendant at the residence, and a juvenile enter the residence after the informant left with the cocaine. The informant also told the agents that Defendant had his older daughter, Narissa Nichols, present during the drug transactions. This information was consistent with what the agents observed on February 24, 2015, as they observed a vehicle, known to be driven by Narissa Nichols, parked outside the residence while the informant was inside.

Between February 26, 2015 and March 16, 2015, agents conducted physical surveillance on Defendant. From this physical surveillance, agents deduced that the residence was Defendant's primary residence. Also during this time, specifically between February 26, 2015 and March 23, 2015, the informant made multiple recorded phone calls to Defendant at (xxx) yyy-zzzz to discuss the sale and purchase of one and one-half kilograms of cocaine. On March 23, 2015, with the assistance of Trooper Elsey, agents obtained a state court order for phone records and geographical locator information for the number (xxx) yyy-zzzz.

On March 24, 2015, the informant made recorded calls to Defendant and arranged for the purchase of the cocaine. During these calls, Defendant told the informant that he had to wait for his daughter to pick up his toddler so he could go pick up the cocaine. After this call, the agents observed Narissa Nichols arrive at the residence and exit with a toddler. Soon after his daughter

left, agents observed Defendant leave the residence. When Defendant returned, he called the informant and told him that he was waiting for his supplier to drop off the cocaine. At 5:30 p.m., agents observed an unidentified individual enter the residence and depart shortly after. Shortly after this individual left, Defendant phoned the informant and told him to come to his residence to purchase the cocaine. The informant also told agents that he or she knew Defendant carried firearms and had observed Defendant in possession of handguns and assault rifles while at the residence. The informant also mentioned that he or she knew Defendant owned pit bulls, which he trained to fight, and that these pit bulls were kept at the residence. In addition to the information discussed above, the affiant summarized Defendant's criminal history and noted that he had previous arrests for aggravated assault, trafficking in drugs, carrying concealed weapons, weapons under disability, and resisting arrest.

Based on the above-mentioned information, the record clearly demonstrates that the state and federal affidavits provided probable cause for the issuing judges to believe that drugs would be found at Defendant's residence. *See Berry*, 565 F.3d at 338 (stating that to establish probable cause, officers must demonstrate "a fair probability that contraband or evidence of a crime will be found in a particular place") (quoting *Gates*, 462 U.S. at 236).

### B. Motion to Suppress Statements

Defendant next argues that the district court erred in relying primarily on the law enforcement agent's testimony to support its determination that Defendant knowingly and intelligently waived his *Miranda* rights. We find that the district court did not err in determining that Defendant knowingly and intelligently waived his *Miranda* rights.

As stated in the preceding section, when reviewing a district court's decision on a motion to suppress, this Court reviews the lower court's findings of fact for clear error and conclusions

of law *de novo*. *Lyons*, 687 F.3d at 762 (citing *Howard*, 621 F.3d at 450). The reviewing court must also give deference to the district court's credibility determinations since the district court was in the best position to make such a determination. *United States v. Hill*, 195 F.3d 258, 264−65 (6th Cir. 1999). "Findings of fact anchored in credibility assessments are generally not subject to reversal upon appellate review." *United States v. Hudson*, 405 F.3d 425, 442 (6th Cir. 2005) (internal quotation marks omitted). Because the district court denied Defendant's Motion to Suppress Statements, this Court reviews all evidence in the light most favorable to the government. *Long*, 464 F.3d at 572.

Here, the district court determined that Agent Costanzo testified credibly. The district court also found that the CFD's report corroborated Agent Costanzo's testimony. The CFD report indicated that Defendant's breath movements and blood circulation were normal and noted that he was oriented after receiving the glucose paste. The district court compared this case to *United States v. Collins*, 462 F. App'x 507 (6th Cir. 2012). In *Collins*, the Sixth Circuit held that the district court properly admitted the defendant's confession because the defendant did "not demonstrate[ ] that his diabetes (or anything else) left him unable to understand what he was doing; the investigating officer . . . testified that [the defendant] was 'very alert' throughout the interview." 462 F. App'x at 509.

The district court held that, in similar fashion to *Collins*, Defendant gave coherent responses to Costanzo's questions. The record reflects that Defendant admitted ownership of the cocaine and cocaine press in the residence, and that Defendant physically walked around the residence with agents pointing out where the cocaine and other drug trafficking paraphernalia were located. Likewise, in *Collins*, this Court stated that "[a]lso confirming that [the defendant] knew what he was doing [we]re his accurate descriptions of robberies that occurred weeks earlier

and his cogent explanation of why he would break multiple windows in the cars he targeted rather than just one." *Id*. at 510. Additionally, Defendant stated to CFD after they had given him the oral glucose that he was "ok[ay]" and that his blood sugar just dropped due to the unexpected run. Finally, the district court found that Defendant's testimony "suffer[ed] from several credibility issues." (R. 63, Order Den. Mot. to Suppress Statements, PageID# 230.) Defendant testified at the hearing that he did not remember being read his *Miranda* rights or waiving those rights. However, Defendant testified that he remembered other interactions from that period of time, including walking in and out of his residence with the agents. The district court determined that Agent Costanzo's testimony was more credible than Defendant's testimony, and, thus, found that Defendant knowingly and intelligently waived his *Miranda* rights.

Due to the significant deference given to the district court's factual findings anchored in credibility assessments and viewing the evidence in the light most favorable to Plaintiff, we find that the district court did not clearly err in finding that Defendant made a knowing and intelligent waiver of his *Miranda* rights. *See Hudson*, 405 F.3d at 442; *Collins*, 462 F. App'x at 509−10.

## III. CONCLUSION

For the aforementioned reasons, we hold that the district court did not err in denying Defendant's Motions to Suppress Evidence and Statements. Accordingly, we **AFFIRM** the district court's judgment.