NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0037n.06

No. 24-1236

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF MICHIGAN |
| GERMIN BAEZ GUZMAN, | ) | |
| | ) | OPINION |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

**FILED**
Jan 27, 2025
KELLY L. STEPHENS, Clerk

Before: COLE, WHITE, and MATHIS, Circuit Judges.

**HELENE N. WHITE, Circuit Judge.** Defendant-Appellant Germin Baez Guzman was indicted for attempting to possess fentanyl with intent to distribute. The district court denied his motion to suppress evidence obtained during the search of a mail parcel. After Guzman entered a conditional plea that reserved his right to appeal that denial, the district court sentenced him to 48 months' imprisonment. Guzman now appeals the denial of his motion to suppress, and we AFFIRM.

## I. Background

### A. The Warrant

On August 26, 2022, United States Postal Inspector Matt Schmitz applied for and obtained a warrant (the Warrant) to search a "12.5[-]inch by 9.5[-]inch U.S. Postal Service (USPS) Priority Mail Express Flat Rate Envelope with tracking number EI258374846US" that "weighs approximately 6 ounces" and is "addressed to 'G. Baez, 1714 13th St, Menominee, MI 49858,' and bears a return address of 'A. Soli, 18394 N 170th Ln, Surprise, AZ 85374'" (the Envelope).

R. 25-1, PID 50. The affidavit Schmitz submitted in support of his application (the Affidavit)

reads, in relevant part, as follows:

> I have been employed by the United States Postal Inspection Service for approximately 18 years and was previously employed as a Police Officer with the City of Middleton (WI) and City of Janesville (WI) Police Departments for a total of six years. As part of my duties as a Postal Inspector, I investigate the use of the U.S. Mails to illegally send and receive controlled substances and drug trafficking instrumentalities. I have participated in investigations which have resulted in the arrest of individuals who have received and distributed controlled substances using the U.S. Mail, as well as the seizure of the illegal drugs and proceeds from the sale of those illegal drugs. My training and experience includes identifying packages with characteristics indicative of … the distribution of controlled substances.
> . . . .
> In August[] 2022, Michigan's Upper Peninsula Substance Enforcement Team (UPSET) Investigator Jake Lauren told me he received information through his own investigative actions and from other law enforcement officials that Germin Guzman of Menominee, MI, was distributing cocaine and Percocet pills. Specifically, Investigator Lauren reported that in March[] 2022, a confidential source told law enforcement during an interview at the Marinette (WI) County Jail that they purchase Percocet pills and ounces of cocaine from Guzman. In July[] 2022, a second confidential source told law enforcement during a traffic stop that they had recently purchased a "blue Percocet 30" pill from Germin Guzman. Investigator Lauren told me both confidential sources did not provide the information on Germin Guzman in exchange for money or consideration on pending criminal charges. Additionally, Investigator Lauren told me … a property records search in Menominee, MI show[ed] Germin Baez Guzman purchased a property at 1714 13th St. in Menominee, MI in March[] 2022.
> As a Postal Inspector one of my primary responsibilities is investigating controlled substances that are distributed using the U[.]S[.] Mail. Through 18 years of experience working controlled substance investigations involving the U[.]S[.] Mail[,] I have learned that certain geographical areas experience a prevalence of different types of controlled substances. Most recently, I have executed search warrants on numerous parcels destined for northeast Wisconsin and Michigan's Upper Peninsula and located methamphetamine, cocaine, and small blue pills displaying the inscription, "M/30." These blue pills resemble Percocet tablets but have been found to contain fentanyl. In 2022, I have been involved in investigations in which over 30,000 blue fentanyl tablets inscribed with "M/30" have been seized from parcels sent through the U[.]S[.] Mail that were destined for northeast Wisconsin and Michigan's Upper Peninsula. Based upon this experience I believe the "blue Percocet" pills that are referenced in Investigator Lauren's information are, in fact, fentanyl tablets.
> In August[] 2022, I queried USPS records for information on parcels delivered to 1714 13th St. in Menominee, MI 49858 and learned that between

May[] 2022, and August[] 2022, six (6) Priority Mail Express parcels weighing between approximately .1 pounds and .4 pounds were mailed from Surprise, AZ to this address. Through my training and investigative experience[,] I have learned that individuals receiving controlled substances commonly receive mailings or parcels that originate from the same general geographical area on a regular basis (weekly, bi-weekly, monthly, etc[.]).

. . . I contacted the Menominee, MI Post Office and directed them to notify me if they received any mailing from Arizona that was addressed to 1714 13th St. On August 25, 2022, the Menominee Post Office told me they received a Priority Mail Express Flat Rate Envelope (SUBJECT ENVELOPE) addressed to 1714 13th St that had originated from Surprise, AZ. I directed the Menominee Post Office to hold the mailing until I could arrive for additional investigation. On August 25, 2022, I arrived at the Menominee Post Office and … saw [that] [the SUBJECT ENVELOPE] … exhibited a bulge that was approximately 4-5 inches long and one inch thick, a size consistent with the SUBJECT ENVELOPE possibly containing a quantity of controlled substances.

On August 26, 2022, I queried the CLEAR law enforcement search engine for information on the SUBJECT ENVELOPE's return address, "A. Soli, 18394 N 170th Ln, Surprise, AZ 85374," and learned no one with the last name of Soli was known to be, or to have been, associated with this address. I have learned through my training and investigative experience that individuals mailing controlled substances commonly use fictitious return address information as an attempt to avoid identification as the source or sender of controlled substances.

R. 25-1, PID 50–52 (paragraph numbers and headings omitted).

After obtaining the Warrant, Schmitz and Brown County Drug Task Force Investigator Kyle Mason searched the Envelope. It contained a "plastic shopping bag" with "a SweetTarts candy box" inside that held "a plastic [Z]iplock bag that contained 804 small blue tablets inscribed with 'M' and '30'" and "weigh[ing] approximately 88.53 grams." R. 40-1, PID 120. They tested one of the pills and it was positive for fentanyl.

### B. Procedural History

On October 11, 2022, a grand jury indicted Guzman for "attempt[ing] to knowingly and intentionally possess with intent to distribute forty grams or more of a mixture or substance containing … fentanyl," in violation of 21 U.S.C. §§ 841 and 846. Indictment, R. 1, PID 1. Lauren arrested Guzman on February 1, 2023, and Guzman was arraigned the next day.

Guzman moved to suppress all evidence obtained during the search of the Envelope. He first argued that there was no probable cause to support the issuance of the Warrant because (1) there was insufficient detail to establish a nexus between the Envelope and Guzman or his property, and (2) the Affidavit contained insufficient details about the CIs' statements and no indicia of their reliability. Second, he argued that the good-faith exception set forth in *United States v. Leon*, 468 U.S. 897 (1984), did not apply because "the affidavit is so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable," and because Schmitz both prepared the Affidavit and executed the Warrant. R. 25, PID 46–47. The government responded to both arguments.

The district court held a hearing on the motion to suppress. Because it was potentially relevant to the good-faith inquiry, Schmitz testified that he sent the application to an Assistant U.S. Attorney to review the Affidavit before he submitted it—apparently a standard practice for him.

Following the hearing, the district court denied the motion to suppress, noting that "[t]hese facts were sufficient to give rise to reasonable suspicion, but whether they were sufficient to establish probable cause is a closer call." R. 50, PID 149. It nonetheless held that the issuing judge who signed the Warrant "had a substantial basis on which to" find probable cause, and that, in the alternative, the good-faith exception would apply. *Id.* at PID 154.

A grand jury issued a superseding indictment on August 15, 2023. The superseding indictment replaced the prior charge, which contained a 40-gram quantity specification, with a charge that Guzman had attempted to possess an unspecified quantity of fentanyl with intent to distribute.

Just over two months later, Guzman and the United States entered into a conditional plea agreement that specifically reserved Guzman's right to appeal the denial of his motion to suppress.

After holding the guilty plea in abeyance pending sentencing, the district court accepted Guzman's guilty plea and sentenced him to forty-eight months' imprisonment, three years of supervised release, a $1,000 fine, and a $100 special assessment. Guzman timely appealed, challenging only the district court's denial of his motion to suppress.

## II. Standard of Review

"When reviewing a defendant's claim that a search violated the Fourth Amendment and the lower court wrongly denied a motion to suppress, this Court reviews the district court's factual findings for clear error, and its legal conclusions *de novo*." *United States v. Abdalla*, 972 F.3d 838, 844 (6th Cir. 2020) (internal quotation marks omitted). And "[w]hen reviewing the denial of a motion to suppress, we must consider the evidence in the light most favorable to the government." *United States v. Couch*, 367 F.3d 557, 560 (6th Cir. 2004) (internal quotation marks omitted).

## III. Analysis

## A. Probable Cause

*1. Legal Standard*

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. That protection extends to "letters and sealed packages subject to letter postage" sent through the United States mail. *United States v. Van Leeuwen*, 397 U.S. 249, 251 (1970).

To obtain a warrant, a proponent must show "a probability or substantial chance of criminal activity." *United States v. Christian*, 925 F.3d 305, 311 (6th Cir. 2019) (en banc) (quoting *United States v. Tagg*, 886 F.3d 579, 585 (6th Cir. 2018)). "In order to demonstrate probable cause sufficient to justify a search warrant, the proponent must submit an affidavit that indicates a fair

probability that evidence of a crime will be located on the premises of the proposed search." *United States v. Dyer*, 580 F.3d 386, 390 (6th Cir. 2009) (cleaned up). And "[t]here must … be a nexus between the place to be searched and the evidence sought." *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc) (internal quotation marks omitted).

In determining whether this standard has been met, courts employ a "totality-of-the-circumstances approach." *Christian*, 925 F.3d at 312. That "metholodog[y]" "requires [judges] to look holistically at what the affidavit does show, instead of focusing on what the affidavit does not contain, or the flaws of each individual component of the affidavit." *Id.*; *see also United States v. Hines*, 885 F.3d 919, 921–22 (6th Cir. 2018) ("Not all search warrant affidavits include the same ingredients. … [W]e consider the affidavit proper if, in its totality, it sufficiently demonstrates probable cause for that search warrant.").

"The district court must employ great deference when considering the issuing judge's probable cause determination." *United States v. Sanders*, 106 F.4th 455, 461 (6th Cir. 2024) (en banc) (internal quotation marks omitted). Consistent with such deference, and with the totality-of-the-circumstances approach, "the court is limited to examining the information contained within the four corners of the affidavit, [and] line-by-line scrutiny of the underlying affidavit is improper when reviewing the issuing judge's probable cause determination." *Hines*, 885 F.3d at 923–24 (cleaned up).

### 2. Application

Considering the Affidavit as a whole, we agree with the district court that the CIs' "statements supported an inference that Defendant had access to a supply of a controlled substance over a period of several months. Schmitz then connected this inference to the subject package through the other facts in the affidavit." R. 50, PID 154. Considering "the factual and practical

considerations of everyday life on which reasonable and prudent men, not legal technicians, act," *Draper v. United States*, 358 U.S. 307, 313 (1959) (quoting *Brinegar v. United States*, 338 U.S. 160, 175 (1949)), suppression is not warranted.

Guzman first resists this conclusion by attacking the CIs' statements. He argues that the Affidavit "contains no assertion as to the veracity of the informants' tips," Schmitz did not interview the CIs himself, the statements are stale and so vague as to create no nexus with Guzman's property or mail, and law enforcement took no steps to corroborate the statements. Appellant's Br. at 8–19.

Although the allegations in the Affidavit could have been more detailed, with more information about the confidential informants, Guzman's arguments on this front ultimately do not persuade. "[A]n affidavit need not name a confidential informant, but merely provide indicia of reliability." *United States v. Johnson*, 351 F.3d 254, 259 (6th Cir. 2003). And although the Affidavit never expressly addresses the CIs' reliability, it contains other indicia of reliability. First, the tips came from "confidential sources," not anonymous tipsters. R. 25-1, PID 51. And the issuing judge could reasonably infer that law enforcement knew the identities of the confidential sources because the Affidavit states that the sources made their statements during a jail interview and a traffic stop—two face-to-face interactions with law enforcement. *United States v. May*, 399 F.3d 817, 824–25 (6th Cir. 2005) ("The statements of an informant … whose identity was known to the police and who would be subject to prosecution for making a false report, are thus entitled to far greater weight than those of an anonymous source … even though the identity of the confidential informant was not disclosed by [the affiant] in his affidavit or under oath[.]").

Second, by giving their statements, the confidential sources admitted to criminal conduct— buying drugs. And "[a]n admission against penal interest, as this was, is a significant, and

sometimes conclusive, reason for crediting the statements of an informant." *Armour v. Salisbury*, 492 F.2d 1032, 1035 (6th Cir. 1974).

Guzman argues that we should not consider these indicia of reliability because the Affidavit never states that Schmitz personally interviewed Lauren's sources, or that he personally knew their identities when he prepared the Affidavit. Appellant's Br. at 9, 14. But Lauren, and perhaps other law-enforcement officers, knew the sources' identities. The *May* court's reasoning that known informants have more incentive to be truthful, and that they run the risk of prosecution for making a false report if they lie, therefore applies here. And, where the facts and circumstances have satisfied our reliability inquiry, we have previously allowed affiants to rely on informant statements relayed to them by other law-enforcement officials. *See United States v. Crawford*, 943 F.3d 297, 306 (6th Cir. 2019).

Third, although the Affidavit does not recount the drug buys in detail, both CIs stated that they had purchased the same type of drug (Percocet) from Guzman and one specifically described a "blue Percocet 30" pill. R. 25-1, PID 51. "[M]ultiple sources providing the same information[] increas[es] the likelihood that the tip is reliable." *Crawford*, 943 F.3d at 307. Guzman's argument that the CIs' statements, as recounted in the Affidavit, were insufficiently detailed, Appellant's Br. at 17 ("Here, the confidential informants fail to describe where the transactions occurred, how the transactions occurred, who was present during these transactions, how much money was involved in the transaction, or any detail whatsoever about the transactions."), does not rebut the point that two independent CIs corroborated each other, albeit at a high level of generality. *See United States v. Woosley*, 361 F.3d 924, 927–28 (6th Cir. 2004) (holding that an affidavit was sufficient where, among other facts, the affiant officer received information from multiple informants that the defendant was using a property for drug trafficking); *United States v. Pate*, 665 F. App'x 464, 472

(6th Cir. 2016) ("[The affidavit] stated that … 'a confidential source informed investigators [that] [the defendant] was actively involved in trafficking kilogram quantities of cocaine[,]' and that a 'separate confidential source also informed investigators [that] [the defendant] was actively involved in trafficking kilogram quantities of cocaine.' … [T]he second informant[] … was corroborated by … the first informant."); *cf. Johnson*, 351 F.3d at 259 (rejecting an argument that an affidavit was insufficient because it "did not state what quantities of drugs were observed and therefore leaves open the possibility that merely non-prosecutable trace amounts were present" because "[i]f an informant claims to be present during a drug sale, the common-sense interpretation of that claim is that the informant witnessed the transaction and that the transaction involved quantities of drugs larger than trace amounts").

Finally, the Affidavit states that Lauren represented to Guzman that neither source received money or leniency on pending criminal charges as consideration for their statements. We agree with the government that Guzman's argument that Schmitz's statement that neither CI received "money or consideration on pending criminal charges" should be read to imply that law-enforcement officials may have offered consideration on "*future* criminal charges that may or may not be brought in exchange for information," Appellant's Br. at 15, attempts to employ just the kind of "line-by-line scrutiny" that this court has previously rejected, *United States v. Greene*, 250 F.3d 471, 479 (6th Cir. 2001). Affiants, and particularly affiants without legal training, need not parse every word of their affidavits so precisely. Accordingly, the Affidavit contained enough indicia of the CIs' reliability that their statements can be considered in evaluating probable cause.

Guzman's next argument—that the Affidavit generally does not establish the requisite nexus because it contains no specific allegations that Guzman was using the mail or his Michigan address to traffic drugs, Appellant's Br. at 16—fares no better. In addition to the CIs' statements

discussed above, the Affidavit describes a series of similar-weight packages regularly sent from Surprise, Arizona, to Guzman's address; an apparently fake sender name; a bulge in the Envelope that, based on Schmitz's experience, was consistent with the Envelope possibly containing drugs; and Schmitz's recent experience investigating fentanyl pills mailed to Wisconsin and Michigan's Upper Peninsula. That is enough to establish "a nexus between the place to be searched"—the Envelope—"and the evidence sought"—narcotics and other evidence of drug trafficking. *Carpenter*, 360 F.3d at 594 (internal quotation marks omitted).

Guzman's argument that the CIs' statements are stale similarly falls flat. "Evidence of ongoing criminal activity will generally defeat a claim of staleness," *Greene*, 250 F.3d at 481, because "conspiracy to traffic narcotics[] is not a chance encounter in the night. It is a regenerating conspiracy," *United States v. Young*, 847 F.3d 328, 347 (6th Cir. 2017) (collecting cases). Here, the allegations that (1) different informants bought drugs from Guzman on two separate occasions, and (2) Guzman received a series of packages from Surprise, Arizona, over a period of three to four months support an inference of ongoing criminal activity.

Guzman next argues that the sender's name on the Envelope not matching the return address does not necessarily mean the return address itself is fictitious, and that Schmitz's allegations about Guzman receiving several packages of similar weight from Surprise, Arizona, over a short period of time are insufficiently specific to establish a pattern that would support a finding of probable cause. Appellant's Br. at 12–13, 19–22. Further, he asserts, there are plausible alternative explanations for those packages. *Id.* at 12 ("Surely, in this day and age of Amazon home deliveries, it will take more than merely confirming that an individual owns a piece of real property and that in the span of a four-month period four packages originating from the same city were delivered to that piece of real property."). But "probable cause does not require officers to

rule out a suspect's innocent explanation for suspicious facts." *Tagg*, 886 F.3d at 586 (internal quotation marks omitted). And, once again, the court looks to the totality of the circumstances. Neither receiving multiple packages at fixed intervals nor at least one of those packages showing a return address in which the name was not associated with the address in a law-enforcement database, standing alone, would satisfy the probable cause standard. But these facts do not stand alone, they are joined by the Affidavit's other facts, so this argument also misses the mark.

The remaining two cases on which Guzman relies—*United States v. Helton*, 314 F.3d 812 (6th Cir. 2003), and *United States v. Frazier*, 423 F.3d 526 (6th Cir. 2005)—do not help him, either. *Helton* involved a tip that "thirty-one telephone calls were made from January to October 1998 between [the suspected drug traffickers] and the telephone at [the target residence]," which the affiant independently confirmed; non-probative allegations from a known CI; and allegations from an anonymous tipster that were potentially more probative but lacked indicia of reliability. 314 F.3d at 820–21. In that factual context, the *Helton* court found that the anonymous tipster's statements "do not merit much weight in the probable cause determination," and that the allegations as a group did not add up to probable cause. *Id.* at 821–23. Here, all the allegations in the Affidavit came from either Schmitz or CIs whose statements had indicia of veracity. And "[a]nonymous tips … demand more stringent scrutiny of their veracity, reliability, and basis of knowledge than reports from confidential informants." *Id.* at 820. Accordingly, Guzman's reliance on the more stringent scrutiny applied to the anonymous tip in *Helton* is misplaced.

*Frazier* is also inapposite. The affidavit in that case relied on uncorroborated statements from two CIs that had no indicia of reliability. *Frazier*, 423 F.3d at 532 ("The bulk of the information contained in the Frazier affidavit comes from confidential sources: CW–1 and CI–178. … The Frazier affidavit contains no facts supporting the confidential informants'

reliability. … Nor does the affidavit contain evidence that Agent Steward corroborated the information that the informants provided."). In contrast, in the Affidavit, the CIs' statements about receiving Percocet pills from Guzman corroborated each other and there were other indicia of reliability as to those statements. Schmitz also addressed Guzman's pattern of recently receiving many similar packages, detailed his experience that individuals receiving drugs frequently receive packages in such a pattern, and explained that the Envelope had suspicious characteristics.

In short, when viewed with the appropriate deference to the issuing judge and in the light most favorable to the district court's decision, the Affidavit contains enough allegations to establish "a probability or substantial chance" that officers would find evidence of drug-trafficking in the Envelope. *See Christian*, 925 F.3d at 311 (internal quotation marks omitted). The district court therefore did not err by denying Guzman's motion to suppress.

## IV. Conclusion

For the reasons set out above, we AFFIRM.